UNITED ARTISTS CORPORATION and
Walt Disney Productions,
Plaintiffs-Appellees,

v.

Harold FREEMAN, Defendant-Appellant.

No. 78–2681
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1979.

Rehearing Denied Dec. 5, 1979.

* Fed.R.App.P. 34(a);  5th Cir. R. 18.

Baldwin & Yeager, Arthur G. Yeager, Jacksonville, Fla., C. Emmett Pugh & Associates, C. Emmett Pugh, New Orleans, La., for defendant-appellant.

Blackwell, Walker, Gray, Powers, Flick & Hoehl, James E. Tribble, Miami, Fla., for plaintiffs-appellees.

Before BROWN, Chief Judge, and KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges.

PER CURIAM:

The issue in this case is whether the District Court erred in refusing to vacate a default judgment entered against appellant Harold Freeman. United Artists and Walt Disney Productions filed suit against appellant, claiming various infringements of the copyright laws. Appellant refused to answer the complaint or cooperate in discovery. The District Court granted plaintiffs' motion for default judgment. The Court later denied appellant's motion to set aside the judgment and his motion for a rehearing. We reverse and remand for further proceedings.

*Plaintiffs' Initial Victory: How To Succeed In A Lawsuit Without Really Trying*

Appellant Harold Freeman is no stranger to federal court, having been enjoined in 1969 from selling or offering to sell copyrighted movies. The case currently before us originated in 1974, when plaintiffs brought suit contending that appellant was selling and leasing 16 millimeter prints of copyrighted motion pictures in violation of the copyright laws (U.S.C.A., Title 17) and the 1969 injunction. Appellant, who was not represented by an attorney, failed to file an answer to the complaint.

In November of 1974, plaintiffs filed a motion for default and default judgment. The following month, the Court held a hearing on plaintiffs' motion. Still without counsel, appellant attended the hearing. Two months after the hearing, the Court issued a written order denying plaintiffs' motion and setting the date for a pre-trial conference. The Court's order indicated, however, that if appellant failed to attend the pre-trial conference or the trial itself, default judgment would be entered.

Prior to the pre-trial conference, plaintiffs initiated discovery. Appellant failed to attend a scheduled deposition. Moreover, appellant failed to respond to a request to produce certain documents. He claimed that the requested documents were destroyed in a tornado, i. e., *Gone With The Wind.*

Taking the Court's warning seriously, appellant appeared at the pre-trial conference. At the conference, the Trial Judge questioned him about his failure to appear at the scheduled deposition. Appellant claimed that he did not learn about the deposition until the day after he was scheduled to appear. The Court then proposed that the deposition take place after the pre-trial conference. Appellant informed the Court that he would not answer *any* questions at such a deposition, presumably on the basis of legal advice that he could claim the Fifth Amendment. Accordingly, plaintiffs renewed their motion for a default judgment. The Trial Judge, who had exercised considerable patience throughout the case, took plaintiffs' motion under advisement and ultimately concluded that he had no choice but to enter the default judgment. The Court granted injunctive relief and assessed damages, attorneys' fees, and costs against appellant in the amount of $36,842.45.

*Appellant's Claim: A Funny Thing Happened On The Way To The Courthouse*

Appellant contends, among other things, that the Trial Court erred in entering a

default judgment (and denying a motion to vacate the judgment) without attempting to correct appellant's misunderstanding about his rights and obligations at a deposition.

Our reading of the record reveals that appellant's decision not to cooperate in a deposition stemmed from advice given to him by a lawyer, Mr. James Fischette, prior to the pre-trial conference. This lawyer did not agree to represent appellant, but apparently did advise appellant of his right not to answer certain questions. Appellant evidently interpreted the advice to mean that he did not have to answer *any* questions at a deposition.[1]

The Trial Court did not attempt to correct appellant's confusion. Instead, the Court asked plaintiffs' lawyer: "[I]n view of the circumstances as they exist at the present time, what suggestion do you have with this Court as to further procedure in this case?" The attorney responded that a default judgment was appropriate. A few weeks later the Court entered the default judgment.

F.R.Civ.P. 37(b)(2)(C) provides that if a party "fails to obey an order to provide or permit discovery" then the Court may enter an order "rendering a judgment by default against the disobedient party."[2] However, Rule 37(b)(2) also recognizes that the Court shall enter "such orders in regard to the failure [to cooperate with discovery] as are just."

A default judgment is clearly "a drastic remedy and should be resorted to only in extreme situations." *Charlton L. Davis & Co. P. C. v. Fedder Data Center*, 5 Cir., 1977, 556 F.2d 308, 309. In discussing the similarly harsh sanction of dismissing a complaint, the Supreme Court observed that Rule 37:

should not be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.

*Nat'l Hockey League v. Metro. Hockey Club*, 1976, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747, 749, quoting *Societe*

---

1. The following colloquy took place at the pretrial conference:

    THE COURT:
    Well, this case is going to have to be tried sooner or later and it looks like it's going to have to be tried without a lawyer representing you. And the Plaintiffs have a right to take your deposition. And what I'd suggest is, now that you're here, is that they go ahead and take your deposition this afternoon.
    APPELLANT:
    Well now, is the deposition something that can be used against me?
    THE COURT:
    Certainly it can be used against you or it could be used for you.
    APPELLANT:
    Well, this Mr. Fischette says I don't have to say anything. I—I've tried to go to church and answer anything. I've tried to cooperate. Back six years ago, I tried to cooperate with them, but if I don't have to say anything, I'm not going to—I'm going to object to everything and not say anything because I don't—I can't understand that. I don't get it.
    THE COURT:
    Well, if you want to do it that way, you can go ahead and do it that way. And Mr. Fischette is not representing you before this Court.

    \* \* \* \* \* \*

    THE COURT:
    Mr. Freeman has just stated that the taking of his deposition would be a useless act because he is not going to answer any questions that you might ask him if you took his deposition this afternoon.
    Is that correct?
    APPELLANT:
    Yes, sir. He said—what did they call it?
    MRS. FREEMAN: [Appellant's wife]:
    Immaterial.
    APPELLANT:
    —immaterial, anything that I said, what happened in the past, even though I haven't done anything in the past I'm ashamed of doing, but that's what he said.
    THE COURT:
    If you were to appear for the taking of your deposition at 2:00 o'clock this afternoon, would it be your intention not to answer any questions?
    APPELLANT:
    Not to answer nothing, no, sir. . . .

2. Moreover, F.R.Civ.P. 37(d) provides that the Court may enter a default judgment if a party fails to attend his own deposition. Plaintiffs argue that appellant's refusal to answer any questions is tantamount to nonattendance.

*Internationale v. Rogers*, 1958, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255, 1267. The teachings of *Societe Internationale* are fully applicable in the default judgment context. *Flaks v. Koegel*, 2 Cir., 1974, 504 F.2d 702, 707–09. See also *Bonaventure v. Butler*, 5 Cir., 1979, 593 F.2d 625; *In re Liquid Carbonic Truck Drivers Chemical Poisoning Litigation*, 5 Cir., 1978, 580 F.2d 819; *Factory Air Conditioning Corp. v. Westside Toyota, Inc.*, 5 Cir., 1978, 579 F.2d 334; *Emerick v. Fenick Industries, Inc.*, 5 Cir., 1976, 539 F.2d 1379.

██ In this case, the record suggests that appellant's refusal to cooperate with respect to his deposition may have stemmed not from willful or deliberate disregard of the judicial process or the rights of plaintiffs, but rather from confusion and ignorance. Appellant, who has only an eighth grade education and who was faced with a difficult legal issue, was understandably confused by Mr. Fischette's advice. We hold that the Court, under the circumstances, ought to have attempted to clear up appellant's confusion in an effort to determine whether appellant's refusal to cooperate at his deposition constituted an obdurate refusal to attend the suggested deposition and answer questions not shielded by the Fifth Amendment.[3] It is difficult to fault the very patient Trial Judge, but aware as he obviously was of appellant's lack of understanding, he ought to have explained to him how and under what circumstances he could have legitimately claimed the Fifth Amendment. There is absolutely no indication that appellant was defiant or obdurate—he was just sincerely trying to preserve his right not to incriminate himself. Accordingly, we hold that the default judgment must be set aside,[4] but with such costs to be imposed against appellant (relating to the litigation thus far) as the Trial Court deems just.

We emphasize, however, that if appellant remains steadfast in his refusal to cooperate with the Court, then the Trial Judge may reinstate the default judgment. Since our disposition leaves open the possibility that the default judgment may be reinstated, we think it appropriate to discuss a further matter. The Trial Court awarded damages of $35,000, attorneys' fees of $1,600, and costs of $242.45. As best we can tell from the record, these sums were awarded without a prior hearing.

██ The case law is clear that a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation. *Flaks, supra,* 504 F.2d at 707; *Eisler v. Stritzler*, 1 Cir., 1976, 535 F.2d 148, 153–54. Here, the amount of damages certainly was not liquidated or capable of mathematical calculation. Statutory damages for copyright infringements are set at "not less than $250 or more than $10,000 as the court considers just." 17 U.S.C.A. § 504(c). In this case, the Court awarded $35,000 damages for 36 infringements (or $972.22 per violation). Clearly these damages should not have been awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts.[5]

---

3. Although the order granting the default judgment refers only to appellant's failure to answer the complaint, our reading of the record leads us to conclude that appellant's stated refusal to answer questions at a rescheduled deposition was the significant reason for the Court's decision.

4. Plaintiffs' brief cites several cases for the proposition that the party seeking relief from a default judgment must show that he had a meritorious defense to the action. However, these cited cases arise under Rule 60(b)(1), not under Rule 37. Even assuming that a challenge to a default judgment stemming primarily from a failure to comply with discovery requires a showing of a meritorious defense, "a hint of a suggestion [of a] meritorious defense" is sufficient. *Moldwood Corp. v. Stutts*, 5 Cir., 1969, 410 F.2d 351, 352. See also *Gomes v. Williams*, 10 Cir., 1970, 420 F.2d 1364, 1366. Here, plaintiffs base their case largely on two letters allegedly written by appellant. In a sworn affidavit, however, appellant denies writing or causing the writing of these letters. In contrast to the facts in *Moldwood Corp.* and *Gomes*, appellant has offered more than a mere "bald assertion" of a valid defense.

5. We have considered appellant's numerous other challenges to the default judgment and find them to be without merit. Under the doctrine of "law of the case," our ruling as to

858

REVERSED and REMANDED for further proceedings.

appellant's other claims is binding on all subsequent proceedings at both the district and appellate court levels. See, e. g., *Lincoln National Life Ins. Co. v. Roosth*, 5 Cir., 1962, 306 F.2d 110, 113, *cert. denied*, 1963, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.