ADOLPH COORS COMPANY, et al., Plaintiffs-Appellees,

v.

MOVEMENT AGAINST RACISM AND THE KLAN, et al., Defendants-Appellants.

No. 85–7082.

United States Court of Appeals, Eleventh Circuit.

Dec. 12, 1985.

Mary E. Howell, Howell & Bayer, New Orleans, La., for defendants-appellants.

Charles A. Powell, III, Barry V. Frederick, Birmingham, Ala., Earl K. Madsen, Golden, Colo., for Adolph Coors.

Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Libel law seeks to protect the private right of the individual against false statements that diminish his standing in the eyes of others. But when expression concerns issues of public consequence, the law of libel "runs squarely into the right to freedom of expression" and poses problems "among the most complex and troublesome in the whole field of First Amendment doctrine." T. Emerson, The System of Freedom of Expression 517 (1970). Courts have long recognized the preeminent position of First Amendment rights in our constitutional firmament. We could not countenance even the slightest diminution of the liberties there enshrined. But our devotion to these principles will not permit us to sanction use of the First Amendment as a shield from the truth-finding function of the courts where rights of expression or association are not fairly implicated. This is such a case.

## I. BACKGROUND.

This action arises from the showing of a slide program styled "Unmasking the Ku Klux Klan." The show is accompanied by a tape recorded script. In context, the script discusses the associations of certain wealthy families with "ultra-right wing" causes. At the relevant point, the screen shows a slide of Joseph Coors (who is not a party to this suit) and the script reads: "In Colorado, the Coors family, owners of the multi-million dollar Coors brewery, have [sic] always been identified with the Klan, and through the Coors foundation, they have ties with the Klan and the John Birch Society."

This diversity action was filed on December 18, 1981, by the appellees, the Adolph Coors Co., the Adolph Coors Foundation, William Coors, and Peter Coors, alleging libel by the appellants, the Movement Against Racism and the Klan and three Movement officers—Glenda Jo Orel, Laurie Thrasher, and David Gespass. The appellees sued for libel only as to the statement attributing a Klan connection, seeking nominal damages of one dollar and punitive damages of $10,000. The appellants moved to dismiss *inter alia*, for lack of the proper amount in controversy required by 28 U.S.

C.A. § 1332 (1985). The complaint was amended to demand $50,000 compensatory damages for each showing and punitive damages of $100,000. Coors also sought equitable relief.

The appellees have long been the bugbears of social activists due to their strong support of conservative causes. But during the course of this suit, the appellants were forced to concede that, though they claimed to have relied upon reports of Coors' Klan connection published in the New York Times and the Washington Post, they could not verify these allegations. Appellants ultimately issued a retraction. They appear to have made these statements with a good faith belief in their veracity.

 During the discovery phase appellees sought access to a number of the Movement's organizational details—identity of members and employees, financial and travel records, and internal papers and correspondence. Appellees specifically sought "the identity of individuals to whom 'Unmasking the Ku Klux Klan' has been sold, rented or exhibited" for the stated reason that it was necessary to make out the amount of damages. Such compelled disclosures would, of course, be constitutionally excessive; appellants refused to release this data, arguing correctly that the First Amendment made such information privileged. They submitted affidavits recounting numerous cases of beatings, bombings, and harassment of their associates by the Klan as evidence of the risks of such disclosure. They also submitted affidavits suggesting that the Adolph Coors Co. participated in organizations that circulated among other employers and law enforcement agencies "blacklists" of activists in the cause of political and civil rights.

On appellees' Motion to Compel, the magistrate ordered production without permitting oral argument and in violation of the district court's briefing schedule. On Motion for Review, the district court vacated the discovery order and remanded the constitutional question.

On September 15, 1982, the trial court granted appellees' partial Motion for Summary Judgment on the issue of liability, although the Movement's discovery requests were unanswered and pending and the discovery cut-off date had not yet arrived. On the remaining issue of damages, the magistrate ordered production of documents identifying dates and places of showing. When appellants' Motion for Review of the magistrate's failure to address the constitutional issue was returned stamped "Overruled," they moved for recusal of the trial judge. He denied that motion, but shortly thereafter recused himself *sua sponte.*

The case was reassigned to United States District Judge Robert R. Propst, who immediately vacated the Order of Summary Judgment. During the interregnum appellees had also filed a Motion for Sanctions. Judge Propst held a hearing on August 28, 1984, at which appellees were ordered to make a showing of "lack of alternative sources and compelling need." The court denied the Motion for Sanctions because the judge was not satisfied that appellees had made the required showing. The court then ordered the more narrow discovery here at issue. Appellants requested certification of the constitutional question for interlocutory review; this was denied.

Specifically contested is the narrowly tailored discovery that the trial court ordered. It directed appellants to disclose: 1) the number of places in which the show was exhibited; 2) the date on which each exhibition took place and in what state; 3) the approximate number of people who viewed the show; and 4) the substance of any allusions to appellees.

Appellants did agree to divulge the number of showings and rentals and the estimated total size of the audiences that viewed either the show or copies of the script and slides.[1] They took exception to the second order regarding dates and states because they considered this likely to lead to disclosure of their cohorts and to

---

1. The appellants claim the total number of viewers was no more than 5,000 people.

risk subjecting these people to Klan violence. After several Motions for Sanctions and several refusals to answer, at which Judge Propst exhibited remarkable patience with both sides, the court ordered that if the appellants did not comply within seven days default would be entered; if disclosure was not made within fourteen days, a final judgment would be entered awarding damages of $10,001. The court also gave appellees the option to request a hearing for additional damages. They did not do so. Nor did appellants comply. The final judgment was entered January 2, 1985. This appeal followed.

## II. DISCUSSION.

On appeal the Movement raises four arguments: A) that the information sought was privileged under the First Amendment; B) that the sanction of default was unduly harsh under the circumstances; C) that the record is not sufficient to sustain the amount of damages awarded below; and D) that the trial court manufactured its own jurisdiction. The findings of fact leading to the discovery order made by the court below are subject to a clearly erroneous standard of review. *Hardin v. Stynchcomb*, 691 F.2d 1364, 1372 (11th Cir. 1982).

### A. The First Amendment Claim.

In *NAACP v. Alabama ex rel Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court held that courts could not compel disclosure of membership and affiliation with organizations engaged in political and social advocacy. Exposure entailed great risk of personal and collective attack, abuse, and opprobrium constituting "effective ... restraint on freedom of association." *Id.* at 462, 78 S.Ct. at 1172. The Court found that "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.* The chilling effect posed by disclosure meant that courts could enter such orders only in the face of "substan-

tial" state interest. *Id.* at 464, 78 S.Ct. at 1173.

The Court magnified the degree of deference due claims of associational privilege when it held that "the Constitution's protection is not limited to direct interference with fundamental rights." Orders to divulge membership information can impermissibly chill though only an "indirect ... infringement on the members' associational rights." *Healy v. James*, 408 U.S. 169, 183, 92 S.Ct. 2338, 2347, 33 L.Ed.2d 266 (1972); *Buckley v. Valeo*, 424 U.S. 1, 74, 96 S.Ct. 612, 661, 46 L.Ed.2d 659 (1976) (*per curiam*). "Freedoms such as these are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." *Bates v. City of Little Rock*, 361 U.S. 516, 523, 80 S.Ct. 412, 416, 4 L.Ed.2d 480 (1960).

The Movement posits that disclosure of documents revealing the date and state of showing "is tantamount to ordering defendants to turn over the names of individuals and organizations who sponsored and attended these showings." They argue that defendants need only make a showing of "reasonable probability" that disclosure would subject them to reprisals or harassment by public or private actors. *Buckley*, 424 U.S. at 74, 96 S.Ct. at 661. This burden of proof, in some circumstances, may be met by showing a "pattern of threats or specific manifestations of public hostility ...." *Id.* In all cases the presumption is that speech and association are privileged. *See generally, Gooding v. Wilson*, 405 U.S. 518, 521–22, 92 S.Ct. 1103, 1105–06, 31 L.Ed.2d 408 (1972). The Movement argues that appellees have failed to make a showing of interest sufficient to outweigh the privilege that they claim.

Despite the presumptive privilege we must afford First Amendment claims, this case is not governed by the standard of proof articulated in *Buckley*. If the questions posed by the trial court treaded even arguably on protected speech or association rights then appellants would clearly have met their burden and we would not

hesitate to reverse. But in order to assert this privilege effectively, the appellants must first demonstrate at least an "arguable First Amendment infringement." *U.S. v. Grayson County State Bank,* 656 F.2d 1070, 1074 (5th Cir. Unit A 1981), *cert. denied sub nom., First Pentecostal Church v. United States,* 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982). They have failed to do so.

Affidavits and depositions suggest it is unfortunately the case that the appellants have been, in the past, subject to attack for the principles they espouse. But it cannot seriously be advanced that the information ordered disclosed by the court below would further that oppression in any way. This slide show has been presented in states from New England to California. The last showing appears to have been sometime in 1981 or 1982. The notion that disclosing that three years ago somewhere in the state of California perhaps fifty unnamed people watched a slide show risks exposing these people to Klan violence is simply too improbable to support a finding of privilege.[2]

In this case Judge Propst was sensitive to appellants' concerns. He carefully crafted a narrow discovery order that properly shielded appellants from disclosing information that truly was privileged. Concurrently, the order gave appellees access to information needed to establish both actual malice (necessary on the liability question, *Hunt v. Liberty Lobby,* 720 F.2d 631, 642 (11th Cir.1983)) and the extent of dissemination (crucial to the damages question, *see generally, id.* at 649–50 & n. 34.).[3]

In any First Amendment case it is the duty of this Court to ensure that a constitutionally permissible end, such as discovery, is not achieved in ways that "unduly ... infringe the protected freedom" at stake. *Cantwell v. Connecticut,* 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). That has been done here; the appellants can ask no more.

**B. The Default Sanction.**

■ The appellants also contest the imposition of the default sanction under Fed. R.Civ.P. 37(b)(2)(C), which penalty they characterize as unduly harsh given the facts of this case. The Supreme Court has held that a primary purpose of Rule 37 sanctions is to deter future abuse of discovery. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) *(per curiam).* Sanctions may also be imposed to punish those guilty of "willful bad faith and callous disregard" of court directives. *Securities and Exchange Commission v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 666 (5th Cir. 1981).

■ On appeal we may reverse for abuse of discretion, *National Hockey League,* 427 U.S. at 642–43, 96 S.Ct. at 2780–81; *Carlucci v. Piper Aircraft,* 775 F.2d 1440, 1447 (11th Cir.1985). But the decision to enter a default judgment ought to be the last resort—ordered only if noncompliance is due to willful or bad faith disregard of court orders. *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d

---

**2.** At oral argument the Court asked counsel for appellants how this information posed a threat to associational rights. Counsel replied that, by knowing the date and state of a showing, the appellees or others could search through local newspapers to uncover the names of Klan opponents, thereby subjecting these people to great danger.

It must be emphasized that the information in question is *entirely* in the public domain. Though the task of uncovering these names without the information at issue might be arduous, it could nonetheless be done by computer-assisted research of newspaper databanks wide-

ly available. We are not prepared to cabin the process of discovery, so necessary for a fair trial, when the concomitant protection of associational rights, not even fairly implicated, is so attenuated.

**3.** The appellees submit that, on the merits, this case should be decided under the standard announced in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). They concede that they are "public figures" as defined by *Curtis Publ. Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

1255 (1958); *Equal Employment Opportunity Commission v. Troy State University,* 693 F.2d 1353, 1354 (11th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3538, 77 L.Ed.2d 1388 (1983); *Morton v. Harris,* 628 F.2d 438, 440 (5th Cir. Unit B 1980) (*per curiam* ), *cert. denied sub nom., Morton v. Schweiker,* 450 U.S. 1044, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981). On appeal we will also find an abuse of discretion if less draconian but equally effective sanctions were available. *Aztec Steel Co. v. Florida Steel Corp.,* 691 F.2d 480, 481–82 (11th Cir.1982), *cert. denied,* 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983); *Diaz v. Southern Drilling Co.,* 427 F.2d 1118, 1126–27 (5th Cir.), *cert. denied sub nom, Trefina, A.G. v. United States,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). On the facts here presented, we find no basis for relief from the judgment of default *per se.* We find bad faith noncompliance and no reasonable expectation that lesser sanctions under Rule 37 would have had the necessary effect.

The judge below exhibited great sensitivity to appellants' concerns: he ordered discovery only minimally adequate to meet the legitimate needs of the appellees; he iterated the duty of *all* parties to abide by court directives; and he gave appellants repeated opportunities to avoid default. Appellants' response was a flat pretermission of the trial court's orders. They made clear that they would divulge only that information they deemed discoverable and no more, though it was clear that the discovery ordered was in no way violative of the principles recognized in *NAACP v. Alabama.* This Court, and the former Fifth Circuit, repeatedly have held that this type of willful, bad faith conduct supports imposition of default judgments under Rule 37. *Aztec Steel,* 691 F.2d at 482; *Sig M. Glukstad, Inc. v. Lineas Aereas Nacional-Chile,* 656 F.2d 976, 979 (5th Cir. Unit B. 1981); *Jones v. Louisiana State Bar Association,* 602 F.2d 94, 96–97 (5th Cir.1979); *Factory Air Conditioning Corp. v. Westside Toyota, Inc.,* 579 F.2d 334, 337–38 (5th Cir.1978) (*per curiam* ).

The default judgment is the most awesome weapon in the Rule 37 arsenal. Yet it is evident from the record that no other sanction would have been appropriate. The appellants made clear that under no circumstances would they comply with the discovery order. Thus there were no other means by which the appellees could secure a proper resolution of their claim. Judge Propst resorted to default only after finding that "it would be fruitless to consider other coercive measures" in light of appellants' steadfast assertions. The only effective remedy was the entry of a default judgment and assessment of damages. In the face of such obstreperous behavior we cannot find that the decision of the district court constituted an abuse of discretion. *Aztec Steel Co.,* 691 F.2d at 481–82.

Refusal to abide by the law is not cost-free. No litigant and no attorney, even if motivated by misguided perceptions of constitutional privilege, may be permitted to exhibit such contumacious conduct without risk of sanctions under Rule 37. *Jones,* 602 F.2d at 96. It is manifestly the province and duty of the courts to say what the law is. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803); E. Coke, 1 Inst. 130a (Philadelphia ed. 1853) (1st ed. London 1628). When parties or lawyers substitute their own judgments for those judges, we have not justice but chaos.

C. *The Quantum of Damages.*

■ After entering the judgment of default against the appellants, the trial court found damages of $10,001. Appellants argue that it was improper to enter an order for damages following a default judgment without a proper hearing. Generally, imposition of Rule 37 sanctions is governed by an abuse of discretion standard. *Emerick v. Fenick Industries,* 539 F.2d 1379, 1381 (5th Cir.1976). But in *United Artists Corp. v. Freeman,* 605 F.2d 854 (5th Cir. 1979) (*per curiam* ), the former Fifth Circuit held that judgment of default awarding cash damages could not properly be entered "without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *Id.*

at 857. Damages may be awarded only if the record adequately reflects the basis for award via "a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Id.; accord, Carlucci,* 775 F.2d at 1453–54.

■ A hearing was held on November 14, 1984, to consider sanctions. But from the record we find no evidence that the hearing provided the court with any basis to make $10,001 a reasonable estimate of damages. The sole justification offered for the figure was that it would act "as a sanction for defendants' demonstrated bad faith and callous disregard of their responsibilities." That is not sufficient to meet the *United Artists* requirement. It must be clear from the record either that a hearing was held that meaningfully informed the judgment of the court below or that the trial court utilized the "mathematical calculations" and "detailed affidavits" of which *United Artists* spoke. Here neither requirement was met. Accordingly, on that narrow issue, and that alone, we must return this case to the trial court so that it may create a record and make findings adequate to support whatever award of damages it deems appropriate given the factual posture of this case.

### D. "Manufactured Jurisdiction".

Appellants argue finally that the order of the trial court entering damages in the amount of $10,001 was merely a ruse for meeting the amount in controversy requirement for diversity jurisdiction. 28 U.S.C.A. § 1332 (1985). They claim that the court thereby "manufactured" its own jurisdiction to hear the case.

■ This argument is meritless. It is hornbook law that the amount in controversy requirement is met by a *bona fide* allegation of damages in excess of $10,000. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); 1 J. Moore, Moore's Federal Practice ¶ 0.92[1], at 852–54 & n. 2 (2d ed. 1985). Once that is made and the federal court is seized of jurisdiction, the court's power is not conditional on a later award of at least that amount.

"The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." 303 U.S. at 289, 58 S.Ct. at 590. In order to secure a dismissal, the burden is on the defendant to show "to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* The defendants-appellants failed to make such a showing. Accordingly, this argument fails.

### III. CONCLUSIONS.

We find no merit to appellants' claim that the discovery here at issue is violative of First Amendment freedoms. Nor are we persuaded either that the default judgment ordered below under Rule 37 was improperly entered or that the trial court lacked subject matter jurisdiction to resolve this controversy. The only issue of merit presented is that the trial court failed to establish on the record an adequate basis for the damage award it entered. Thus, we AFFIRM on issues A, B, and D, and we REVERSE AND REMAND as to issue C so that the trial court may create a record adequate to sustain whatever award of damages it deems appropriate given the factual posture of this case.

AFFIRMED in part and REVERSED in part and REMANDED.