### In re BIMINI ISLAND AIR, INC., Debtor.

### No. 04–26111–BKC–JKO.

United States Bankruptcy Court,
S.D. Florida,
Fort Lauderdale Division.

Oct. 18, 2006.

Chad P. Pugatch, Craig A. Pugatch, Esq, Ft. Lauderdale, FL, for Bimini Island Air, Inc.

Jason E. Slatkin, Ft. Lauderdale, FL, for GMS Partners Ltd.

Bill Tarnove, Ft. Lauderdale, FL, for New Flights, Inc.

## ORDER IMPOSING SANCTIONS

JOHN K. OLSON, Bankruptcy Judge.

**THIS MATTER** came on for hearing on July 10, 2006 on Petitioning Creditors' Motion for Further Sanctions Due to Debtor's Continuing Discovery Abuses (the "Motion") [CP 65] and the Debtor's Response in Opposition [CP 69].

This is a contested involuntary chapter 11 case which has been pending for more than two years, tied up in discovery issues which are troublesome. On January 11, 2005, the Petitioning Creditors served Debtor with a set of interrogatories (the "Interrogatories"), along with their First Request for Production of Documents from Alleged Debtor (collectively referred to as the "Discovery Requests"). Also on January 11, 2005, Debtor, Bimini Island Air Inc. ("Bimini"), served its First Request for Production on Walleland Aircraft Leas-

ing, LLC, Maxfly Aviation, and GMS Partners, Ltd. (the "Petitioning Creditors"), all of which have provided documents in response thereto.

At the beginning of the document review and deposition phase of the discovery process, it was agreed by all parties that Maxfly and Bimini would jointly employ the services of an accountant to perform a reconciliation of the accounts between Maxfly and Bimini to determine if there was any monetary liability owed by Bimini to Maxfly or vice versa, and if so the amount of such.

The reconciliation was concluded on June 2, 2005. At the time of the receipt of the reconciliation, Bimini and Maxfly agreed to provide each other with any documents that supported or refuted the reconciliation. Maxfly provided Bimini with its supporting documents on June 30, 2005. As of July 14, 2005, Bimini had not provided Maxfly with supporting documents, so Petitioning Creditors filed a Motion to Compel Alleged Debtor to Respond to Discovery Requests and for Further Relief (the "Motion to Compel") [CP 27]. The Court entered an Order on the Motion to Compel on August 8, 2005 [CP 35] which directed Bimini to respond to the discovery requests identified in the Motion to Compel within 10 days; to produce any documents refuting the reconciliation referenced in the Motion to Compel; and to pay Maxfly's counsel $1250.00 for an unjustified failure to timely and properly respond to discovery.

On August 19, 2005, Bimini provided a banker's box of documents to the Petitioning Creditors' counsel along with an explanatory letter indicating that because of the large number of invoices that were responsive to the document requests, these invoices would be available for inspection at Bimini's place of business. Counsel for Petitioning Creditors requested dates on

which to complete the inspection; however, an arrangement could not be reached for an inspection.

On October 7, 2005, almost two months after the Motion to Compel was filed and the one-year anniversary of the filing of the involuntary petition, Petitioning Creditors field a Motion for Contempt Against the Alleged Debtor for Continuing Discovery Abuses (the "Motion for Contempt") [CP 41]. The Court heard the Motion for Contempt on November 7, 2005 and entered an Order on November 14, 2005 [CP 45]. That Order directed Bimini to pay additional sanctions in the amount of $1250.00 to counsel for the Petitioning Creditors; denied the Motion for Contempt as to the striking of Bimini's pleadings and entering an order for relief, without prejudice to Petitioning Creditors renewing this prayer for relief should Bimini fail to comply with the remaining terms of the Order; directed Bimini to produce all requested documents, including all requested payroll documents on or before November 11, 2005; and directed Bimini to make Mr. Michael O'Brien available for taking his deposition on or before November 18, 2005.

On June 6, 2006, Petitioning Creditors filed a Motion for Further Discovery Sanctions Due to Alleged Debtor's Continuing Discovery Abuses (the "Motion for Further Sanctions") [CP 65]. Petitioning Creditors request further sanctions pursuant to Fed.R.Bankr.P. 7037 ("Rule 7037"). Rule 7037 applies Fed.R.Civ.P. 37 to bankruptcy adversary proceedings and, through Rule 9014, to contested matters such as this. Petitioning Creditors, citing *National Hockey League, et al. v. Metropolitan Hockey Club, et al.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) and *Phipps v. Blakeney*, 8 F.3d 788 (11th Cir.1993), argue that Bimini's dilatory conduct and bad faith in complying with discovery requests

is sufficient grounds for the striking of a party's defenses under Rule 37.

A primary purpose of Rule 37 sanctions is to deter further abuse of discovery. *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538 (11th Cir.1985). Bimini contends that Petitioning Creditors have asked for the harshest relief available under Rule 37 without demonstrating the basic prerequisite for such sanctions—the violation of a court order. Bimini's argument is disingenuous. Bimini violated the August 8, 2005 Order requiring it to turn over any documents referenced in the Motion to Compel within ten days when it waited eleven days to make an incomplete and wholly inadequate proffer of documents that allegedly refuted the reconciliation referenced in the Motion to Compel. Bimini cannot in good faith argue that it was not in violation of the Court's August 8, 2005 Order because Petitioning Creditors sought the Court's assistance in resolving the same discovery dispute on October 7, 2005 when it filed its Motion for Contempt. After hearing the Motion for Contempt, this Court entered an Order on November 7, 2005 granting the Motion for Contempt in part and ordering Bimini to turn over the complete set of documents that it was originally ordered to—but did not—turn-over in August.

The question I must consider, on this third motion for discovery sanctions, is whether Bimini's conduct has reached a point where the harsh sanctions requested by Petitioning Creditors are warranted. The nature of the current issue suggests that such sanctions are appropriate.

The Petitioning Creditors contend that Bimini has attempted to perpetrate a forgery in the process of discovery by deleting the critical concluding sentence on a document prepared by Bimini's accountant, Troy Enos of London Witte & Compa-

ny, PA. Enos prepared a memo dated September 17, 2003, addressed to the alleged Debtor's principal, Michael O'Brien. In it, Enos summarized the accounts between the Debtor and one of the Petitioning Creditors, Maxfly, Inc.

The critical concluding sentence of that memo states:

> In summary, Creston/Bimini appears to owe $48,650.32 for the last four months on the N266AM and N799SP offset by the $14,772.45 leaving a balance of $33,877.87.

Without that sentence, one could read the Enos memo as concluding that Maxfly was a net debtor to the Bimini, rather than the other way around. The issue is critical because the Debtor has asserted that Maxfly is not the holder of a claim that is not contingent as to liability or the subject of a bona fide dispute within the meaning of 11 U.S.C. § 303, such that the Debtor contends that Maxfly is not eligible to be a petitioning creditor.

Petitioning Creditors point to Enos' March 8, 2006 deposition testimony where Enos testified that there was only one version of his memo—the one concluding with the unnumbered paragraph stating that Bimini then owed Maxfly a net balance of $33,887.87. Petitioning Creditors argue that based on Enos' testimony, there is only one possible explanation for the incomplete copy of the Enos memo produced by Bimini—that Bimini had tampered with the memo in an attempt to defeat Maxfly's eligibility to be a petitioning creditor under § 303.

Bimini posits a number of possibilities why the version of the Enos memo it produced was incomplete including: that the last paragraph could have been cut-off in a facsimile transmission (despite any allegation that Enos' memo was only received by fax, and despite any appearance that the doctored version had even been sent by fax); that Enos may have produced two copies of the memo (despite Enos' direct testimony to the contrary); or that it was possible that a draft copy of the memo was transmitted to Bimini prior to the addition of the last paragraph (here again, despite Enos' unequivocal testimony to the contrary). These hypothetical explanations smack of "the dog ate my homework" and are every bit as persuasive here as the original argument was in third grade. While one could conjecture a laundry list of hypothetical scenarios to explain the discrepancy in the competing versions of the Enos memo, Petitioning Creditors present the simplest and most logical one: [1] the Enos memo was altered after its receipt by Bimini and prior to Bimini's delivery of it to the Petitioning Creditors.

The Petitioning Creditors suggest that the appropriate sanction is the striking of Bimini's defenses and the entry of an order for relief under § 303, and alternatively suggest that the Court strike Bimini's challenge to Maxfly's eligibility to be a petitioning creditor. In response, Bimini argues that an entry of default is proper only in the face of extreme or egregious conduct and that case law only supports such sanctions if the party acted willfully

---

**1.** This principle—that the simplest explanation is the most likely explanation—is generally referred to as Occam's razor, attributed to the 14th century English logician and Franciscan friar William of Ockham. Occam's razor states that the explanation of any phenomenon should make as few assumptions as possible, and that the least complicated of alternative suggested formulations is most likely to be correct. The principle is a useful bit of logic that is obviously not controlling, but here, in the complete absence of any explanation offered by Bimini which is not directly contradicted by all available evidence, I conclude that the explanation which satisfies Occam's razor is what in fact occurred.

and in bad faith. Additionally, Bimini contends that an entry of default should only be entered when less dramatic sanctions cannot properly redress the wrongdoing because of the public policy which strongly favors litigation on its merits. I am mindful of such considerations, but finds that Bimini's behavior has reached the point where less drastic sanctions have proven to be ineffective.

Petitioning Creditors have twice sought and received monetary sanctions in this case. Petitioning Creditors have twice sought and received orders requiring Bimini to produce the all documents that supported or refuted the reconciliation. This is the third time Petitioning Creditors have come before this Court to resolve a discovery dispute in which Bimini was clearly at fault. Clearly, the Court's earlier orders have had little effect on Bimini as the violation now before me is the most egregious.

 Petitioning Creditors have not offered definitive evidence that the version of the Enos memo Bimini produced was deliberately tampered with by Bimini. It is often difficult to prove fraud except by circumstantial evidence. The circumstances here, presented in the light of Bimini's prior discovery abuses, leads me to conclude that Bimini attempted to perpetrate a fraud in the discovery process. This conclusion, together with Bimini's cumulative conduct, constitutes the type of bad faith that warrants severe sanctions requested by Petitioning Creditors under Fed.R.Civ.P. 37. Of the alternative sanctions suggested by the Petitioning Creditors, I select the less draconian and will strike all defenses raised by Bimini which challenge Maxfly's eligibility to be a petitioning creditor. This sanction is directly proportional to Bimini's miscon-

duct in issuing a forged document relating to Maxfly's claim and is a due and appropriate consequence for that bad act.[2] I will not strike all of Bimini's pleadings in response to this particular misconduct, but that sanction is clearly the next step if one were to become necessary in the future. Accordingly it is:

ORDERED:

1. The Motion is GRANTED.

2. Bimini's defenses relating to Maxfly's eligibility to act as a petitioning creditor are STRICKEN in their entirety.

3. Maxfly Aviation is hereby determined to be a holder of a claim against the Debtor that is not contingent as to liability or the subject of a bona fide dispute.

4. The Court will conduct a status conference in this case on **October 30, 2006,** at 1:30 p.m.

**2.** "The object so sublime/We shall achieve in time/To make the punishment fit the crime, the punishment fit the crime." Sir Arthur Sullivan, *The Mikado*.