[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-11985

Non-Argument Calendar

_____

In Re:
THE DIAMOND TRUST
u/a/d 10/28/2005
WARREN DIAMOND,
as Trustee of the Diamond Trust u/a/d October 28, 2005,
FAITH DIAMOND,
as Trustee of the Diamond Trust u/a/d October 28, 2005,

Plaintiffs-Counter Defendant-Appellees
Cross Appellants,

*versus*

SCOTT DIAMOND,

Defendant-Counter Claimant-Appellant

Cross Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:16-cv-81923-BER

_____

Before ROSENBAUM, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

Scott Diamond appeals the district court's[1] Order of Default Judgment against him in an action alleging breach of fiduciary duty, accounting of the trust, unjust enrichment, conversion, fraud, and unlawful interception of oral communication brought by Warren and Faith Diamond.[2]  Scott asserts the district court abused its discretion in entering a total default judgment as a sanction for discovery violations.  Warren and Faith cross appeal the district court's denial of punitive damages, alleging the district court

---

[1] The parties consented to a magistrate judge conducting all proceedings pursuant to 28 U.S.C. § 636(c), and the magistrate judge entered the orders on appeal.

[2] Warren is Scott's father and Faith is Warren's spouse and Scott's stepmother.

abused its discretion by applying the wrong legal standard.  After review,[3] we affirm the district court.

## I.  BACKGROUND

On October 28, 2005, Warren and Scott executed the Diamond Trust and appointed Scott as the trustee.  The Trust gave Warren the right to amend or revoke the Trust without the consent of the trustee.  On July 7, 2015, Warren executed an amendment to the Trust, appointing Faith as co-trustee with Scott.  One month later, Warren executed another amendment, removing Scott as a trustee and leaving Faith as the sole trustee.  On October 10, 2016, Warren filed suit in Florida state court against Scott for actions related to Scott's role as trustee.  Scott then removed the action to federal court in the Southern District of Florida.

The Second Amended Complaint includes the following claims against Scott:  (1) breach of fiduciary duty, (2) demand for accounting, (3) unjust enrichment, (4) conversion, (5) fraud, and (6) violation of Florida Statute § 943.03.  Warren alleges that in November 2015, after Scott was removed as trustee, Scott unilaterally

---

[3] We review both the district court's sanction of default judgment and the decision to deny punitive damages for abuse of discretion. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1035 (11th Cir. 2014); *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264 (11th Cir. 2009) (quotation marks omitted).

entered into a refinancing agreement for property held by the Trust, and on behalf of the Trust, and personally received approximately $500,000 as a result of the unauthorized transaction. In turn, Scott asserted six affirmative defenses and counterclaims for entitlement to trustee's fees and unjust enrichment.

During discovery, Warren served requests for production on Scott, seeking Scott's audio recordings of Warren and others involved in the refinancing agreement at issue. On January 25, 2018, Scott objected that this request was unduly burdensome but stated he would produce any relevant audio recordings that existed. In both his amended response served on March 1, 2018[4] and second amended response served on April 5, 2018, Scott claimed that he was not aware of any audio recordings relevant to the claims or defenses in the action, but if he became aware such recordings existed, he would produce them.

Despite Scott claiming no such recordings existed, Warren's counsel became aware the recordings existed and were in Scott's possession because they were produced in another case in another jurisdiction.[5] After an evidentiary hearing held on September 18,

_____

[4] We GRANT Appellees' unopposed motion to supplement the record on appeal with a copy of the September 18, 2018 Discovery Memorandum and the Amended Responses.

[5] The magistrate judge did not have the parties submit on the record everything that was obtained during discovery. However, Scott is not challenging the facts as stated by the district court, only whether the sanction of dismissing the whole case was appropriate.

2018, the magistrate judge entered a written order on September 24, 2018, ordering Scott to produce all recordings of Warren and confirm his previous answers as to recordings of other people involved in the refinancing. The magistrate judge ordered that if there were recordings, they should be produced within five days of the order, and that if any of the recordings no longer existed or were no longer in Scott's possession, Scott must provide a report under seal identifying who made the recordings, the location of the participants, the location where the recording was made, which participants, if any, had knowledge of the recording, and the date and time of the recording.

On October 15, 2018, Scott served his Third Amended Responses to the requests for production. In that response, Scott asserted "that he has produced all audio recordings of Warren Diamond in his possession, custody, or control which may concern the Trust and/or issue related to this lawsuit." He also claimed that despite being able to extract recordings of Warren from two iPhones and a hard drive, a third iPhone had been disabled due to multiple password attempts and to the extent such audio recordings existed on the third iPhone, no recordings could be extracted. As to others involved in the refinancing, Scott asserted he had no recordings in his possession, however it was possible there were recordings on the third iPhone he was unable to unlock.

However, more recordings of Warren and recordings of others involved in the refinancing existed, and in October and November of 2019—over a year after the magistrate judge's order—

Scott produced at least 20 more recordings. His reason for the late production was that he "did not look for these . . . calls." Additionally, Scott did not produce the report of recordings in response to the September 24, 2018 order until November 22, 2019.

Moreover, on January 28, 2019, the magistrate judge ordered Scott to turn over "the subject cellular phones, hard drives, and storage or backup facilities or devices" to Warren's expert for inspection. Scott failed to fully comply and later testified that he had two computers in Red Bank, New Jersey and backups of his locked iPhone that were not turned over pursuant to the order. After Scott turned over certain devices to Warren pursuant to the January 28, 2019, order, Warren found other recordings on the devices that had not been produced nor detailed pursuant to the September 24, 2018, order.

Based on the violations and discovery abuses, Warren and Faith filed a motion for sanctions, requesting the magistrate judge strike Scott's counterclaim and enter a default judgment in their favor. The magistrate judge granted the motion and dismissed Scott's counterclaim. Warren then filed a motion for Final Default Judgment, and the court held an evidentiary hearing on monetary damages. The magistrate judge entered default judgment against Scott as to liability on all six counts and awarded $711,288.51 in compensatory damages plus pre- and post-judgment interest. The magistrate judge denied Warren and Faith's request for punitive damages, finding that Scott's misconduct did not meet the required level of reprehensibility as this was a private dispute between a

father and son that did not affect anyone's health or safety, the harm was economic, and Warren has extreme wealth and is not financially vulnerable. The court found Scott's actions "wrongful," but found they "lack[ed] the reprehensibility required for a punitive damages award. The Court views many of Scott's actions as a misguided approach to protect himself from the actions and inactions of his father, and a flawed attempt to strike a balance as a manager of certain entities, trustee, and son to Warren."

## II.  DISCUSSION

### A.  Total Default Judgment as Sanction

Scott contends the district court abused its discretion in entering a total default judgment as a sanction for discovery violations where the violations pertained to only one count of the six-count complaint and the remaining counts did not depend on the recorded conversations.

Under Federal Rule of Civil Procedure 37(b)(2)(A), a district court may sanction a party who fails to obey an order to provide or permit discovery. Possible sanctions include striking pleadings, dismissing the action in whole or part, or rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A). A sanction of default judgment requires a finding of willfulness or bad faith—simple negligence, misunderstanding or inability to comply is not sufficient. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993). Moreover, a default judgment is appropriate

only as a "last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Id.*

The district court did not abuse its discretion when it imposed  the sanction of default judgment against Scott for his repeated misrepresentations.  The magistrate judge correctly found that Scott's failure to comply with the discovery orders was willful. Scott knew he possessed recordings of Warren because he produced them in another case.  Scott repeatedly represented that he had no recordings of Warren when he would later produce over 100 recordings.  Even after amending his discovery responses and stating those 112 recordings were all that existed, Warren discovered even more recordings after inspecting Scott's devices pursuant to court order.

Scott also repeatedly asserted he had no recordings of the others who were expressly named in the discovery requests and were involved in the refinancing transaction.  Despite requests for these recordings and orders from the court to produce them, Scott testified he "did not look for these . . . calls."  Moreover, Scott did not comply with the court's order to turn over his devices to Warren's expert for inspection, specifically two computers in Red Bank, New Jersey and backups of his locked iPhone.  These devices were encompassed in the court's order to turn over "the subject cellular phones, hard drives, and storage or backup facilities or devices" to Warren's expert.  The magistrate judge's willfulness finding was supported by Scott's repeated false claims that the recordings and devices did not exist.

Additionally, despite Scott's argument the recordings were only relevant to Count Six alleging unlawful recording under Florida law, the magistrate judge determined the recordings contained evidence relevant to the 2015 refinancing, the structure of the refinancing, Scott's role as trustee, and his role as manager of entities with the ability to consent to the refinancing.   Our review of the recordings shows they were related to the refinancing.  The magistrate judge determined if the evidence had been timely disclosed, Warren would have conducted further discovery on the issues. However, the trial date on the case had already been pushed back many times and discovery was closed.  Trial was set for only one month past the magistrate judge's order on sanctions.  Thus, the magistrate judge's finding that Warren was prejudiced by Scott's violations was supported as those violations affected Warren's ability to prepare effectively for trial.

Finally, the magistrate judge found that lesser sanctions would not serve the interests of justice as another continuance in the case would potentially be futile as Scott had not yet fully produced the devices and recordings.  The magistrate judge did not abuse his discretion in finding "no sanction short of dismissal would adequately punish Scott for his disregard for the Court's multiple orders."  Although Scott contends his affirmative defenses had merit, "the probable merit of a litigant's case does not preclude the imposition of a default judgment sanction against that litigant." *Malautea*, 987 F.2d at 1544.

In sum, the district court did not abuse its discretion in ordering a total default judgment because of Scott's "clear pattern of repeated, willful disobedience of Court orders."

## B. Denial of Punitive Damages

In their cross appeal, Warren and Faith assert the district court abused its discretion when it applied the wrong legal standard to deny them punitive damages. They assert the  district court committed legal error by conflating whether punitive damages should be awarded at all with the factors to evaluate whether the amount of an award is excessive. They assert they were entitled to an award of punitive damages under Florida law.

In a diversity case, we apply state substantive law to determine whether there was sufficient evidence of conduct warranting punitive damages. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000). Florida law provides a "defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds the defendant was personally guilty of intentional misconduct or gross negligence." Fla. Stat. § 768.72(2). "'Intentional misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Id.* § 768.72(2)(a). "'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such

conduct." *Id.* § 768.72(2)(b).   "Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." *Myers v. Central Fla. Inv., Inc.*, 592 F.3d 1201, 1216 (11th Cir. 2010).

Three considerations guide whether an award of punitive damages is unconstitutionally excessive: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1264 (Fla. 2006) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).

The district court did not abuse its discretion in denying Warren and Faith punitive damages.  The district court cited the Florida law regarding intentional misconduct or gross negligence. Although the magistrate judge did not make an explicit finding that Scott's misconduct was intentional or grossly negligent in his discussion of punitive damages, the finding that Scott's misconduct was intentional or grossly negligent can be inferred by the magistrate judge's determination that Scott's misconduct was "wrongful

12                    Opinion of the Court                    21-11985

but lack[ed] the reprehensibility required for a punitive damages award."[6]

Warren and Faith essentially argue that because they are entitled to punitive damages under Florida law, it was error for the district court not to award them. But Florida's statute regarding entitlement to punitive damages is permissive, not mandatory. *See* Fla. Stat. § 768.72(2) (stating a "defendant *may be* held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds the defendant was personally guilty of intentional misconduct or gross negligence" (emphasis added)). The statute does not say punitive damages *must* be awarded.

Warren and Faith's arguments regarding the denial of punitive damages fail. The district court did not abuse its discretion in denying punitive damages.

**AFFIRMED.**

---

[6] Warren and Faith do not argue the district court's reprehensibility analysis was incorrect, only that the district court should have explicitly found entitlement and that this entitlement mandates some amount of punitive damages. Thus, we do not review the district court's finding that the requisite level of reprehensibility was not present in this case. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (explaining "the law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed").