[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 07-13536 & 07-15164
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 06-80441-CV-DTKH

GOODMAN-GABLE-GOULD COMPANY, a Maryland
corporation d.b.a. Adjusters International,

Plaintiff-Appellee

versus

TIARA CONDOMINIUM ASSOCIATION, INC., a Florida
non-profit corporation, in its own name and as
Agent for and as Class Representative of all
Owners of Record of all individual condominium
parcels within the Tiara Condominium,

Defendant-Appellant,

BROAD AND CASSEL,

Defendant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(January 27, 2010)

Before TJOFLAT and CARNES, Circuit Judges, and BOWEN,[*] District Judge.

TJOFLAT, Circuit Judge:

The dispute in this case arises out of a contract between an insurance adjuster and a condominium located on Singer Island in Palm Beach County, Florida. The condominium was heavily damaged in back to back hurricanes in September 2004, and it hired an insurance adjuster to assess the loss and present its claims to its insurance company. The condominium's loss exceeded both the insurance recovery and the policy limit.

Contending that the adjuster caused part of its loss by failing properly to supervise the contractor hired to restore the building, the condominium refused to pay the adjuster's fee. The adjuster therefore sued the condominium. The condominium counterclaimed, seeking recovery of the expenses the adjuster's negligence had allegedly caused. The case proceeded to trial, and the condominium changed the theory of its counterclaim. It contended that the adjuster was liable—on theories of fraudulent misrepresentation and delay in performance—for the sums the condominium spent drying out the building. On the adjuster's motion, the district court struck the evidence the condominium

[*] Honorable Dudley H. Bowen, United States District Judge for the Southern District of Georgia, sitting by designation.

2

attempted to introduce to support these theories, and granted the adjuster judgment as a matter of law on the counterclaim. The jury then found for the adjuster on its claim and awarded it the fee it was seeking. The district court thereafter entered judgment for the adjuster in conformance with the jury's verdict.

The condominium now appeals, challenging both the district court's evidentiary and judgment as a matter of law rulings and requesting a new trial. We affirm.

## I.

## A.

On September 4, 2004, Hurricane Frances hit Singer Island, seriously damaging the Tiara Condominium ("Tiara"), a 320-unit, 42-story oceanfront condominium tower. Tiara had an insurance policy with Citizens Property Insurance Corporation ("Citizens") having a per occurrence limit of approximately $50 million. In the following days, Tiara retained Southern Services, Inc. ("Southern") to restore its building and Goodman-Gable-Gould Company/Adjusters ("GGG") to adjust its loss. Pursuant to a September 9, 2004 contract (the "Services Agreement"), GGG undertook to "measure and document [Tiara's] loss, and present [Tiara's] claim to the insurance company(s) for damage . . . occurring on or about 9/4/04." Tiara agreed to pay GGG a percentage of the

3

amount it recovered from Citizens on a sliding scale, based on the total amount of recovery.

Three weeks later, on September 25, Hurricane Jeanne hit Singer Island, rendering the Tiara uninhabitable. The Services Agreement was orally modified to include adjusting services for Jeanne, and GGG's fee was proportionately reduced to reflect the increased potential recovery. GGG and Tiara considered Hurricane Jeanne a separate occurrence, such that the insurance policy provided a maximum coverage of $100 million.

With the building uninhabitable, Tiara had the options of drying it out or gutting it. Tiara had Southern dry out the building at a cost of about $100,000 per day. Southern continued the dry-out effort from at least October 28, 2004, until August 7, 2005, charging Tiara $30 million for the work. Tiara had Southern cease the dry-out process when Citizens announced that it intended to treat the hurricanes as one occurrence with a coverage limit of $50 million.

Tiara responded to Citizens's announcement by seeking a declaratory judgment in a Florida state court[1] that the hurricanes were separate occurrences and that Citizens's exposure was $100 million, a sum insufficient to cover Tiara's

---

[1] Tiara filed suit against Citizens in the Circuit Court of Palm Beach County, Florida.

losses.[2]  The lawsuit was resolved through mediation in early March 2006; Tiara received about $89 million.

After the lawsuit settled, GGG presented Tiara with its final statement, which showed a balance of $1,439,259 due on its fee.  Tiara refused to pay it, and, on May 2, 2006, GGG brought the present action.

B.

GGG's complaint alleged that GGG had fully performed the Services Agreement and that Tiara's refusal to pay the outstanding balance on its fee amounted to breach of contract.[3]  Tiara answered the complaint[4] with a general denial[5] and twenty affirmative defenses and a two-count counterclaim for breach of contract (the Services Agreement) and professional negligence.[6]  Both counts

---

[2]  GGG assessed Tiara's losses at $69,194,000 from Hurricane Frances and $58,257,000 from Hurricane Jeanne for a total of $127,451,000.

[3]  In the alternative, GGG sought damages on theories of "Quantum Meruit," or breach of "Oral Agreement/Quasi Contract."  These theories are not relevant here because GGG prevailed on its breach of contract claim.

[4]  The answer referred to in the text is Tiara's amended answer.

[5]  In answering the complaint, Tiara admitted its existence as a Florida condominium and that it was damaged in the September hurricanes, but it either denied or asserted that it lacked sufficient information to respond to GGG's breach of contract allegations.

[6]  Before filing its answer and counterclaims, Tiara moved the district court to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) on the ground that the Services Agreement was unenforceable because it failed to comport with the Florida Administrative Code.  The district court denied its motion on October 12, 2006.  Tiara challenges this ruling in this appeal.  We dispose of the challenge in note 21, infra.

centered on Southern's performance of the restoration work. Tiara alleged that, under the Services Agreement, GGG was responsible for Southern's proper performance of the restoration work, that Southern overcharged for the work, i.e., engaged in "price gouging," and that GGG breached its duty to Tiara by "allowing" Southern to do so (the "price gouging theory").[7]

GGG replied to Tiara's two-count counterclaim by denying the material allegations of the breach of contract claim and by moving for judgment on the pleadings on the negligence claim. The district court granted the motion and struck the negligence claim from Tiara's counterclaim. The case therefore proceeded to trial before a jury on the issues framed by GGG's complaint, Tiara's answer,[8] and Tiara's breach of contract counterclaim.

The trial began May 14, 2007. GGG's case consisted of testimony and documentary evidence of the work it had performed under the Services Agreement. After GGG rested its case on May 23,[9] Tiara proceeded with its

---

[7] Tiara alleged that GGG had a "fiduciary duty or other duties" to ensure that Southern did not overcharge for the work.

[8] Evidence relating to some of Tiara's 20 affirmative defenses was presented to the jury. None of the affirmative defenses, however, were submitted to the jury under the court's instructions, and none are relevant here.

[9] Tiara did not move the district court for judgment as a matter of law under Fed. R. Civ. P. 50(a)(2) at the close of GGG's case or later at the close of all the evidence.

counterclaim for breach of contract.  It abandoned the theory of liability it had

pled—that GGG was liable for Southern's price gouging—and advanced two new

theories of contract liability.  The first was that GGG failed to perform timely its

contractual obligations, causing Tiara damages (the "delay theory").  The Services

Agreement provided that GGG would "measure," "document," and "present"

Tiara's loss to Citizens.  Tiara claimed that the presentation of the loss should

have occurred through the submission of a Proof of Loss.  Tiara articulated the

claim this way: GGG should have filed a Proof of Loss with Citizens within ten-

to-twelve weeks after the second hurricane;[10] if timely filed, the Proof of Loss

would have triggered a twenty-day deadline for Citizens to inform Tiara whether it

would treat Tiara's loss as stemming from one or two occurrences; and had Tiara

timely received the information that Citizens would only pay for one occurrence, it

would have ceased the dry-out efforts immediately (and did so when it received

that information in August 2005).  Instead, GGG did not start working on Tiara's

claim until January 2005 because it "was busy on other projects."

Tiara's second theory of contract liability was that GGG improperly advised

Tiara regarding drying out the building.  The district court labeled this theory a

---

[10] Tiara's expert testified that GGG could have submitted the Proof of Loss as early as November 2004, but no later than 10 to 12 weeks following Hurricane Jeanne, which hit Singer Island on September 25, 2004.  Twelve weeks after this date was December 18, 2004.

"misrepresentation theory" with three permutations.[11]  First, Citizens never required that the building be dried out, but GGG nonetheless represented to Tiara that Citizens required the dry out.  This representation forced Tiara to spend more money to restore the building, which in turn increased the amounts of its loss, its recovery from Citizens, and GGG's fee.[12]  Second, Citizens recommended a dry out, but GGG failed to inform Tiara that gutting the building instead would be less expensive and just as effective.[13]  Third, regardless of whether Citizens required or merely recommended that the building be dried out, GGG failed to inform Tiara that drying the building would be a waste of money.  Tiara sought the recovery of its dry-out expenses under both of its new theories of breach of contract liability: the delay theory and the misrepresentation theory.

When Tiara began introducing evidence in support of its misrepresentation theory, GGG immediately objected pursuant to Federal Rule of Civil Procedure 37(c) on the ground that Tiara had not disclosed the facts constituting the

---

[11]  Although the district court identified three permutations, the second and third permutations actually were breaches of contract, not misrepresentations.

[12]  Although the court did not express this first permutation as a claim of fraudulent misrepresentation, it was just that: GGG deliberately misrepresented that Citizens required the dry out to line its own pockets—the dry out would increase Tiara's loss and insurance claim and therefore GGG's adjusting fee.

[13]  Implicit in this permutation was the notion that GGG had a duty to advise Tiara that Citizens's recommendation would lead to more expense than would be necessary to restore the building.

8

misrepresentations in response to GGG's interrogatories. GGG argued that Rule 37(c) authorized the court to exclude the introduction of evidence not properly disclosed in accordance with Federal Rule of Civil Procedure 26, and urged the court to impose that sanction.[14] The district court sustained GGG's objection and excluded Tiara's misrepresentation evidence the next morning, May 24. The court noted that although GGG's motion was "grounded in Rule 37 of the Federal Rules of Civil Procedure," the basis of the motion, as the court understood it, was "somewhat broader than that" because there was an answer and a counterclaim, both of which were very specific only on the price gouging theory. The court therefore excluded the misrepresentation evidence on the additional ground that the misrepresentation theory "ha[d] not been pled, that it ha[d] not been disclosed, that there is extraordinary prejudice to the Plaintiff, that the case has totally changed complexion."[15]

Its misrepresentation theory having been foreclosed, Tiara proceeded with its delay theory, presenting evidence of the expenses it incurred in drying out the building, $30 million. After it rested its case and the evidence closed, on May 30,

---

[14] See page 13 and note 22, infra, for explanations of Rule 37(c) and 26. The same day, GGG augmented its objection by filing a written motion to exclude any testimony Tiara might seek to introduce in support of such theory.

[15] The court "exclude[d] the testimony on [all] three permutations" of Tiara's misrepresentation theory.

GGG moved the court to strike the evidence of the dry-out expenses. GGG also moved the court to grant it judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a)(2), on Tiara's counterclaim for breach of contract. The court granted both motions.[16] The court found "that the issue of the dryout expenses ha[d] never been pled initially in the Counterclaim nor was appropriate disclosure made about that [by Tiara] in [its] first answers to [GGG's] Interrogatories or in the supplemental answers to the Interrogatories." Allowing Tiara to present evidence of dry-out expenses would constitute "a violation of due process, a failure to comply with [Federal Rule of Civil Procedure 8(a)], a failure to properly disclose information as required in answers to Interrogatories, et cetera."[17] Finding that "but for the dryout issue, there are no damages before The Court," the court determined that Tiara had failed to establish an essential element of its breach of contract counterclaim. Accordingly, it granted GGG's Rule 50(a)(2) motion and dismissed the counterclaim.[18]

---

[16] The court granted the motions on May 31, after reflecting on counsel's arguments on the motions the previous day.

[17] The court went on to say that it was excluding evidence of the dry-out expenses for the same reasons it excluded the misrepresentation testimony under Rule 37(c).

[18] After the district court dismissed Tiara's counterclaim, Tiara moved the court, pursuant to Fed. R. Civ. P. 15(b), for leave to amend its counterclaim to conform to the proof. That rule provides that "[t]he court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Fed. R. Civ. P. 15(b)(1). The court found

10

On May 31, 2007, the jury returned a verdict in favor of GGG for $1,446,849.96.  On June 4, the district court entered a final judgment in that amount.[19]  This appeal followed.[20]

## II.

Tiara raises four arguments on appeal.  Two merit discussion.[21]  First, the

---

that the requested amendment would cause "sufficient prejudice [to GGG] to justify" denying the motion and therefore exercised its discretion to reject the proposed amendment.

We note that Tiara's motion to amend its counterclaim was in essence a motion asking the court to reconsider and reverse its rulings (1) excluding the evidence relating to GGG's alleged misrepresentations and the dry-out expenses and (2) granting GGG judgment as a matter of law on the counterclaim, so that Tiara could reopen its case and present evidence of the alleged misrepresentations.

[19]  On June 12, 2007, Tiara moved under Fed. R. Civ. P. 60(b)(6) for relief from the judgment, alleging that the jury's award of $1,446,849.96 exceeded the maximum judgment permitted under the district court's instructions to the jury.  After GGG filed this lawsuit, Tiara placed the sum of $1,439,259—the amount GGG claimed it was due—in escrow.  When, during its deliberations, the jury sent the court a note asking whether it could "(refer/use) to the number in the escrow," the court, after conferring with counsel, responded that "the parties have agreed that the amount in escrow is the maximum that could be awarded by the jury.  However, the amount that you write on the verdict form should be the total amount you find the party is entitled to receive."  The court denied Tiara's Rule 60(b)(6) motion.  Tiara does not challenge its ruling here.  On July 29, the district court denied Tiara's motion for relief from the judgment.  Tiara is not challenging the denial in this appeal.

[20]  We have jurisdiction under 28 U.S.C. § 1291, which provides that "courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

[21]  Tiara's two other arguments are meritless and therefore require only brief discussion. First, Tiara argues that the district court erred in denying its motion to dismiss GGG's complaint under Fed. R. Civ. P. 12(b)(6) because the Services Agreement failed to comply with consumer protections provisions of Florida law and was therefore unenforceable.  Florida law requires public adjusting contracts to be in writing and include, among other terms, the adjuster's "Florida Department license number," the address and a "brief description of the loss," the "insured's insurance company name and policy number, if available," the date the contract was signed, and compensation.  69 Fla. Admin. Code Ann. r. 69B-220.051(6), (7) (2009).  Emergency Rule

district court abused its discretion in granting GGG's Rule 37(c) motions to exclude evidence based on Tiara's discovery violations. Second, the district court erred in granting GGG's Rule 50 motion for judgment as a matter of law on Tiara's breach of contract counterclaim. We consider these arguments in turn.

A. The district court excluded Tiara's evidence of the misrepresentation theory and the dry-out expenses because the evidence had not been discovered. A district court's evidentiary rulings are reviewed for abuse of discretion. Proctor v. Fluor Enters., Inc., 494 F.3d 1337, 1349 n.7 (11th Cir. 2007). "A district court abuses its

---

69BER04-13(5)(e) also requires that "[a] public adjuster's contract with a client shall be revocable or cancelable by the insured or claimant, without penalty or obligation, for at least 14 business days after the contract is entered into" and that the public adjuster disclose this right.

Tiara claims the Services Agreement is unenforceable because it fails to identify the insurer of the condominium and the policy number and to state that Tiara had the right to revoke or cancel the Services Agreement within 14 business days. This argument fails because the insured's insurance company name and policy number are only required if available and because the Services Agreement stated that "[GGG] complies with all terms and provisions of any emergency orders or rules issued by the Florida Department of Financial Services . . . all of which have been disclosed to [Tiara] and are incorporated therein."

Tiara also claims that because the Services Agreement has to be in writing, the oral modification of the contract to also include adjusting services for the second hurricane, Hurricane Jeanne, is unenforceable. The regulation, however, does not specify that modifications must be in writing, and more importantly, neither party disputes that GGG rendered services for Hurricane Jeanne.

Second, Tiara argues that the district court abused its discretion by mismanaging the litigation, substantially prejudicing Tiara's ability to defend itself and to prove its counterclaim. In particular, Tiara complains that it was not given sufficient time for discovery because the district court's scheduling order was issued during the five months its motion to dismiss GGG's complaint was pending and that the court abused its discretion in refusing to grant its motion to extend the discovery deadline. Tiara ignores the fact that the motion to dismiss was decided only one month after the scheduling order was entered, still permitting Tiara over six months' discovery.

12

discretion when it misapplies the law in reaching its decision or bases its decision on findings of fact that are clearly erroneous." Arce v. Garcia, 434 F.3d 1254, 1260 (11th Cir. 2006).

The ruling on the misrepresentation theory was explicitly granted under Rule 37(c). Under that rule, a district court may preclude a party from introducing evidence that was not disclosed as required by Rule 26(a), (e)(1), or (e)(2) unless the failure was harmless or there was substantial justification for the failure.[22] Here, the alleged discovery violation was of Rule 26(e)(2), which, at the time discovery was conducted in this case, provided that

> [a] party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

---

[22] At the time discovery was conducted in this case, Rule 37(c) provided:

(c) Failure to Disclose; False or Misleading Disclosure; Failure to Admit
     (1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court . . . may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c) (2006) (amended 2007).

13

Fed. R. Civ. P. 26(e)(2) (2006) (amended 2007).

In granting the Rule 37(c) motion to exclude evidence on Tiara's

misrepresentation theory, the court initially observed that Tiara did not disclose

the misrepresentation theory in the allegations of its counterclaim. The court then

stated that

> when the first Interrogatories were served on Tiara, [Tiara was] asked
> to list with particularity how [GGG] failed in their contractual
> obligations, and Tiara was asked to identify all witnesses to the same.
>> Now, Tiara did not comply with . . . listing the witnesses . . . .
>> However, when Tiara filed supplemental answers to its
> Interrogatories on April 17, 2007, which parenthetically happened to
> be the last day for discovery, Tiara listed various people who would
> testify and also specified in a shorthand fashion what they would
> testify about.
>> Nowhere in that is there any mention of either a
> misrepresentation by [GGG that] Citizens never said to dry out the
> building, but [GGG] made that misrepresentation, either because they
> made a mistake, or worse, that they were doing it simply to pad their
> own pockets. That is just not there.
>> Also, nowhere in any of this information is there a suggestion
> that [GGG] failed to explain to the Board that they had an option.

Record, vol. 20 at 1740-41.

The district court also granted GGG's motion to strike the evidence of

Tiara's dry-out expenses for the same reason it struck the misrepresentation

evidence.[23] It found that "the issue of the dryout expenses has never been pled

---

[23] The court treated GGG's motion as a motion addressing the dry-out issue. The dry-out
issue is essentially whether Tiara could have saved money by gutting the building instead of

14

either initially in the Counterclaim nor was appropriate disclosure made about that in [Tiara's] first answers to Interrogatories or in the supplemental answers to Interrogatories."

The district court did not abuse its discretion in excluding the evidence Tiara sought to introduce at trial on its misrepresentation theory and the dry-out expenses based on Tiara's discovery violations.[24] In its initial response to GGG's interrogatories on November 10, 2006, Tiara only disclosed the price gouging theory. Tiara did not mention the misrepresentation theory or dry-out expenses.[25]

---

drying it out. Even if Tiara could have demonstrated that gutting the building would have been less expensive than the dry out, Tiara would have needed to show that GGG could be held liable under the Services Agreement for the dry-out decision. Because the court had already excluded evidence on the misrepresentation theory, at that point in the trial, the only theory under which GGG could be held accountable for the dry out was the delay theory.

[24] In deciding that this evidence should be excluded, the district court initially considered Tiara's answer, counterclaim, initial responses to interrogatories (November 10, 2006), and supplemental responses to interrogatories (April 17, 2007). The district court was provided Tiara's initial responses as an exhibit to GGG's December 7, 2006, motion to compel discovery. The district court was provided Tiara's supplemental responses as an exhibit to Tiara's May 23, 2007, response in opposition to GGG's motion to preclude testimony. The district court additionally considered the deposition of Tiara's representative, Louis Brindisi, a copy of which Tiara gave to the district court on May 23.

[25] In its eleventh interrogatory, GGG asked if Tiara contended that GGG "failed to abide by its contractual commitments . . . in connection with the insurance claims made in connection with Hurricanes Frances and/or Jeanne, identify with particularity how [GGG] failed in this regard and identify all witnesses to the same." Tiara objected to the interrogatory's broadness, but responded in relevant part that GGG

> knowingly accept[ed] invoices for excessive demolition and other costs submitted
> by Southern . . . fail[ed] to adequately supervise and monitor the reconstruction . .
> . fail[ed] to properly advise Tiara as to industry standards and customs concerning
> hurricane renovation, fail[ed] to notify Tiara of the proper amount of insurance

15

Thus, Tiara had a duty to supplement these answers if it would introduce evidence on the misrepresentation theory and dry-out expenses at trial.

Tiara argues that through the deposition of its corporate representative, Louis Brandisi, and its supplemental responses to GGG interrogatories, it put GGG on notice that it planned to proceed with its misrepresentation theory. We agree with the district court that "while it is true that one can garner a phrase here or there from Mr. Brandisi's deposition where he mentions these issues, many times they are phrased in the Brandisi deposition in terms of his sense of upset as to the excessive costs that were being generated by Southern Construction, and others."[26] In Tiara's supplemental responses to GGG's interrogatories, submitted

---

needed to remedy the hurricane damage, fail[ed] to notify Tiara of [Southern's] price gouging, support[ed] [Southern's] price gouging practices, and fail[ed] to properly assemble and obtain a claim that properly reflects the true costs of the repair hurricane damage.

In its fourteenth interrogatory, GGG asked Tiara to "[d]escribe all facts to support [Tiara's] contention, if any, that [GGG] breached its contract and/or agreement with [Tiara] in connection with the insurance claims made in connection with Hurricane Frances and/or Jeanne" and to include when the breach occurred and how Tiara was damaged. Tiara responded, "Please see Answer to Interrogatory No. 11. Further answering, discovery is ongoing and Tiara will supplement this Answer with additional information that is gleaned through the course of further discovery."

[26] Tiara cites the following statements in Brandisi's deposition as evidence that it had properly disclosed the theories it would argue at trial:

- There's several reasons why me, in particular decided not to pay [GGG]. One was the drying out of the building . . . . You know, they [Citizens] should not b the building, so I think it's incumbent upon our professionals to protect us not to just build up a bill so they can get a commission.

16

on the final day of discovery, Tiara noted the identity and planned testimony of its witnesses. These responses reveal no indication that Tiara had abandoned the price gouging theory in favor of the misrepresentation and delay theories. Most of the witness and testimony disclosures do not even tangentially relate to the misrepresentation theory.[27]

In the supplemental responses, Tiara alleged that GGG "failed to advise

• The board made a decision to dry out the building based upon representations that were made to them by our professionals that that's what Citizens wanted them to do. I'm telling you as part of the mediation process, Citizens denied that. They never authorized anyone to dry out the building. That was the position of Citizens.

• [In response to why Tiara says it does not have to pay GGG,] I think Goodman and [GGG] should have stepped in and told the board this [dry-out] is not working. If they were going to get $700,000 a week from Citizens they should have had something in writing from Citizens . . . . Every time Phil [a GGG employee] would get up at a meeting . . . don't worry the insurance company is going to pay for it. . . . Well, the insurance company didn't pay for it and all those representations were not factual. There's a whole series of things that they did.

These statements are insufficient to put GGG on notice that Tiara had abandoned its price gouging theory and would instead be seeking to recover from GGG on the misrepresentation or delay theories.

[27] In support of its argument that its disclosures were adequate, Tiara highlights its disclosure that Norm Adams would testify to "Plaintiff's failure to confirm the amount of insurance coverage, Plaintiff's failure to obtain a scope/estimate of the loss prior to the commencement of reconstruction and prior to the incurrence of substantial costs, and the financial impact on, and damages suffered by, Tiara from GGG's failure to properly perform" and that Louis Brandisi would testify to "the amount of dry-out expenses that Tiara unnecessarily incurred, and the financial impact of the GGG's failures to properly perform on Tiara." Again, these responses do not clearly identify Tiara's intention to pursue the misrepresentation theory or the delay theory, or to abandon the price gouging theory.

17

Tiara of the claims options available under the policy." When listing the damages

it suffered, it included

> a. the incurrence of excessive and/or unnecessary costs submitted by
> Southern Construction and/or other subcontractors, including but not
> limited to:
>
> > (1) Dryout Process - in excess of $20 million was wasted in a
> > failed attempt to dry-out the building. The drying out process
> > should have been between 14-28 days at a cost of $2.5 million.
> > Standards establish that the building should have been dry in
> > that one month time frame, and if it was not, then the dryout
> > attempts should have ceased. Instead, GGG allowed Southern
> > to bill Tiara over $29 million in a failed dryout that lasted for
> > over six months[.]

Although Tiara finally refers to the dry-out expenses in this response, given the

context in which Tiara identified them, GGG could reasonably infer that Tiara was

merely complaining that GGG allowed Southern to charge Tiara too much for the

dry out in accordance with the price gouging theory. Therefore, we conclude that

Tiara did not mention the misrepresentation theories or dry-out expenses in its

answer, counterclaim, and initial interrogatory responses, nor did it ever

supplement its initial disclosures to indicate to GGG that it was abandoning the

price gouging theory in favor of the misrepresentation and delay theories and

seeking dry-out expenses as damages. Accordingly, the district court did not

abuse its discretion in granting GGG's Rule 37(c) motions to exclude evidence

18

supporting Tiara's misrepresentation theory or the claim for dry-out expenses.[28]

B.

Having concluded that the district court did not abuse its discretion in granting GGG's motions to exclude evidence on the misrepresentation and dry-out issues, we turn next to the question of whether the district court erred in granting GGG's Rule 50 motion for judgment as a matter of law on Tiara's counterclaim for breach of contract. Rule 50(a)(1) authorizes a district court, in a jury trial, to grant a motion for judgment as a matter of law on a claim if "a party has been fully heard on [the claim] . . . and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [the claim]."[29]

The district court granted GGG's motion at the close of all the evidence,

---

[28] We can quickly dismiss Tiara's arguments that even if it committed a discovery violation, its evidence should not be excluded under Rule 37(c) because the violation was not knowing and the inadequacy was harmless because GGG had actual knowledge of Tiara's theories and was not prejudiced. First, Tiara claims that it learned in the course of its litigation with Citizens that GGG, not Citizens, had ordered the dry out, giving rise to this suit and the misrepresentation theory. Given that Tiara did not file its amended answer and counterclaim until November 30, 2006—more than eight months after the resolution of the lawsuit with Citizens—Tiara had an obligation to plead properly its misrepresentation theory and reveal the theory in its discovery if it wanted to advance the theory. Second, as GGG indicated to the court, GGG "would have had people from Citizens, and probably a damage expert if [GGG] knew what the damages were." Instead, because GGG thought that Tiara was pursuing a price gouging claim, GGG brought the auditor of its billings to testify.

[29] We review the granting of a Rule 50 motion de novo. Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006).

19

after granting GGG's motions to exclude the evidence regarding Tiara's misrepresentation theory and dry-out expenses. The court found that "but for the dryout issue, there are no damages before The Court, and therefore the Counter Plaintiff has failed to establish an essential element of its counterclaim. Accordingly, I grant judgment as a matter of law on the counterclaim in favor of the Counter Defendants."

On appeal, Tiara argues that the district court erred in granting the Rule 50 motion because it had introduced sufficient evidence on both of its theories of GGG's liability—the misrepresentation theory and the delay theory—to reach the jury. The only damages claimed under these theories, however, were the dry-out expenses. Because the court excluded the evidence of these expenses—and rightfully so, as discussed in part II.A, supra—no damages were proven, and there was nothing for the jury to decide. The court therefore ruled correctly in dismissing the breach of contract counterclaim from the case.

## III.

For the foregoing reasons, the district court's judgment is

AFFIRMED.

20