[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11800

_____

HUNTERS RUN PROPERTY OWNERS ASSOCIATION, INC.,
a Florida Not for Profit Corporation,

Plaintiff-Counter Defendant-Appellee,

*versus*

CENTERLINE REAL ESTATE, LLC,

Defendant-Counter Claimant-Third Party Plaintiff-Appellant,

STRATFORD AT HUNTERS RUN CONDOMINIUM
ASSOCIATION, INC.,

Third Party Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-80407-BER

_____

Before ROSENBAUM and LUCK, Circuit Judges.[*]

LUCK, Circuit Judge:

Centerline Real Estate, LLC, appeals the district court's judgment, following a bench trial, for Hunters Run Property Owners Association, Inc., on the association's contract and statutory claims for unpaid fees and declaratory relief relating to Centerline's mandatory membership in the community country club. Centerline argues that (1) it was prejudiced by the district court's damages award because the association had previously said it wasn't seeking monetary damages; (2) there was insufficient evidence to support the amount of monetary damages; and (3) the condo declaration didn't allow the association to hold Centerline personally liable for the unpaid fees. We affirm.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Hunters Run Property Owners Association is the homeowners' association for Hunters Run, a Boynton Beach housing development, and it operates under the Florida Homeowners'

_____

[*] This opinion is being entered by a quorum pursuant to 28 U.S.C. § 46(d).

20-11800               Opinion of the Court                    3

Association Act.  *See* Fla. Stat. § 720.301 et seq.  The properties in the community are subject to a recorded declaration of "Covenants, Restrictions[,] and Easements."  A 1999 amendment to the declaration requires all new property owners to become members of the community country club.  A series of bylaws further sets forth the relationship between the association and its members.

Centerline purchased four units in Hunters Run in the summer of 2017.  After Centerline bought its units, the association sent it a membership packet informing Centerline that the declaration required it to purchase four country club memberships that together cost roughly $280,000.  Centerline objected and refused to purchase memberships or pay membership fees.

In 2018, the association filed a one-count complaint in Florida state court, pursuant to the declaration and Florida Statute section 720.305.[1]  It alleged that Centerline had breached the declaration and sought an injunction requiring Centerline to (1) comply

---

[1] This section provides:

> Each member and the member's tenants, guests, and invitees, and each association, are governed by, and must comply with, this chapter, the governing documents of the community, and the rules of the association.  Actions at law or in equity, or both, to redress alleged failure or refusal to comply with these provisions may be brought by the association or by any member against . . . [a] member . . . .

Fla. Stat. § 720.305(1)(b).

with the declaration, (2) apply for country club membership and pay the club fees for each property it owned, and (3) maintain club membership in good standing. Centerline removed the case to federal court and asserted several counterclaims for damages and declaratory relief.

## A. Pretrial Motions

After discovery ended, both parties moved for summary judgment. Centerline argued it (1) wasn't required to apply for country club membership and (2) couldn't be contractually required to "pay the requisite fees" because the declaration didn't allow the association to hold property owners personally liable for unpaid fees. Centerline mainly relied on article VII, section 2 of the declaration, which provided "that no [o]wner . . . shall have any personal liability under or in connection with th[e] [d]eclaration" and limited owners' liability under the declaration to their property interests in Hunters Run.

The association responded that the declaration was enforceable and required Centerline to become a country club member. The association contended that whether Centerline could be personally liable under the declaration was unripe because it was "not seeking monetary relief" at that time.

The district court denied Centerline's summary judgment motion entirely and granted summary judgment in part to the association as to Centerline's counterclaim for a declaratory judgment voiding the declaration's country club membership

requirement.  The district court concluded that "[c]lub member-ship [was] appurtenant to holding title to a residential unit in Hunt-ers Run," so, "[b]y operation of [the declaration and bylaws], Cen-terline [was] already a 'member of [the] Count[r]y Club.'"  The dis-trict court also concluded that the declaration allowed the associa-tion to hold Centerline personally liable for unpaid fees because the declaration's protection against owners' personal liability didn't ap-ply to actions brought by the association.

After the district court ruled on the cross-motions for sum-mary judgment, the association moved for a declaratory judgment under Federal Rule of Civil Procedure 54(c).  It asked for a declara-tion that the membership requirement was enforceable against Centerline, "in addition to a permanent injunction or a money judgment for damages."  Centerline opposed the motion, arguing that it would be prejudiced by a declaratory judgment because the request was made "on the eve of trial" after the association only requested injunctive relief in the complaint.  But the district court ruled that because the association had brought a claim under Flor-ida Statute section 720.305, it could seek at trial any remedy per-mitted under the statute—including declaratory relief.

## B.  Bench Trial

Two days before the bench trial, the parties filed a joint stip-ulation that said the association sought approximately $500,000 in various damages related to Centerline's country club member-ships.  The damages calculation included membership fees,

maintenance fees, various assessments, late fees, and interest for all of Centerline's properties. In its trial brief, Centerline argued it was "unfairly prejudiced" by the association's damages request because its trial preparation had been focused only on the injunctive relief the association had sought in its complaint. Centerline alternatively requested a continuance "so that it [could] prepare for a trial that include[d] a claim for declaratory relief."

Before opening statements on the first day of trial, the district court ruled that the association could seek money damages because damages were "embedded" in the association's request for an injunction "since day one," and money damages were authorized under Florida Statute section 720.305. But, to avoid any prejudice, the district court postponed the second day of trial by forty-five days so Centerline could adequately prepare its defense to the association's damages claim.

At trial, the association introduced invoices showing the amount of fees Centerline owed. Centerline objected because the invoices hadn't been produced during discovery and it was "expressly told [the association was] not assessing damages." The association conceded that it hadn't produced the invoices during discovery, but it argued that they were "mailed directly to Centerline" so it didn't need to disclose them. The district court found that the invoices "should have been disclosed . . . under Rule 26(a)(1)(iii)" and initially excluded them, but said the association could move again later to admit the invoices after Centerline had the opportunity to examine them. At the end of the first day of trial, the

district court directed the parties to confer about whether Centerline was entitled to any additional discovery materials related to money damages.

After the association rested its case on the injunction, Centerline moved for a directed verdict. The district court denied Centerline's motion. Fifty-four days later, on the second day of trial, Centerline renewed its directed verdict motion and its objection to the association's request for damages and declaratory relief. The district court took the directed verdict motion under advisement and overruled the objection to the damages and declaratory relief request because "Rule 54 require[d] [the court] to at least allow [the association] to ask for that remedy based upon the claim they asserted."

At the bench trial's conclusion, the district court granted judgment for the association and found that Centerline had violated section 720.305 by failing to pay its country club fees. The district court also found that Centerline wasn't unduly prejudiced by the association's request for declaratory relief and monetary damages under Rule 54(c). Although the association hadn't "disclose[d] its damages calculation until" the joint pretrial stipulation two days before trial or "the underlying documents until the first day of trial," any prejudice to Centerline had dissipated in the forty-five-day recess between the first and second days of trial, when Centerline could seek additional discovery and prepare evidence and arguments opposing damages or declaratory relief. The district court (1) entered a declaratory judgment that the declaration

8                          Opinion of the Court                          20-11800

was enforceable against Centerline and (2) awarded the association $391,344.94 in damages.[2]  Centerline timely appealed.

## II.  STANDARD OF REVIEW

On an appeal from a judgment in a bench trial, we review de novo the district court's conclusions of law and its application of the law to the facts.  *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018).  "The district court's findings of fact, on the other hand, are evaluated under the clear-error standard.  We will not find clear error unless our review of the record leaves us with the definite and firm conviction that a mistake has been committed."  *Id.* (internal quotation marks and citation omitted).  When reviewing for clear error, we "draw[] all inferences in favor of the district court's decision."  *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1253 (11th Cir. 2016).

## III.  DISCUSSION

Centerline makes three main arguments.  First, it argues that the district court abused its discretion by allowing the association to seek damages under rule 54(c).  Second, Centerline contends that the evidence and the district court's factual findings were

---

[2]  The district court found that the association wasn't entitled to all of the damages it had requested because some of those damages weren't "directly related to club membership," and Centerline had sold one of its properties before trial.

insufficient to support the damages award.[3]  Third, Centerline asserts that the declaration didn't allow it to be held personally liable. We address each argument in turn.

### A.  Rule 54(c)

Rule 54(c) provides that, except for a default judgment, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  "A party may be awarded the damages established by the pleadings or the facts proven at trial even though only injunctive relief was demanded in the complaint, . . . unless the failure to demand such relief prejudiced the opposing party."  *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424 (1975) (holding that, under rule 54(c), "a party may not be 'entitled' to relief if its conduct of the cause has improperly and substantially prejudiced the other party").  "Whether the petitioners were in fact prejudiced, and whether the respondents' trial conduct was excusable" are factual findings subject to clear error review.  *Moody*, 422 U.S. at 424.  We review for abuse of discretion whether the district

---

[3]  Centerline also argues that the district court should have granted its motion for a directed verdict and not considered damages at all.  But, "[d]irected verdicts apply only in civil jury trials," not bench trials.  *Falanga v. State Bar of Ga.*, 150 F.3d 1333, 1338 n.12 (11th Cir. 1998).  Even if the district court could have construed Centerline's motion as seeking a judgment on partial findings under Rule 52(c), the district court didn't err in denying the motion for the reasons we discuss below.

court properly granted relief under rule 54(c), "in light of the circumstances peculiar to the case." *Id.*

We see no clear error in the district court's finding that Centerline wasn't prejudiced by the damages request. The request came as no surprise, and Centerline was granted forty-five additional days to conduct damages discovery.

Centerline's argument that the association's damages request "goes beyond the pleaded claim and theory" does not hold up. The issue of the "requisite fees" owed by Centerline had *already* been raised by and flowed directly from the association's pleadings—indeed, the whole litigation was about requiring Centerline to fulfill its membership obligation and pay the country club fees to become a member in good standing.

From the beginning, Centerline knew the association could ask for monetary damages. The association's claim was under Florida Statute section 720.305, which allows for "[a]ctions at law or in equity, or both." Fla. Stat. § 720.305(1)(b). As the district court found, monetary damages were "embedded in [the association's] injunction . . . since day one." The civil cover sheet to the association's complaint said that the "remedies sought" included "monetary" relief. The complaint sought an injunction requiring Centerline to "pay the requisite fees" attendant to membership and "maintain club membership." And the declaration and bylaws (each attached to the complaint) made clear that, to maintain country club membership, property owners had to pay fees and assessments.

The association's discovery disclosures also said that it might seek supplemental relief to reduce equitable relief to damages.

Nor should Centerline have been surprised at the amount of damages the association requested. Long before litigation, Centerline had received the association's invoices that supported its claim for damages. And when Centerline removed the case to federal court based on diversity, it estimated that the amount in controversy approximated $300,000 because the association sought an injunction for "Centerline to pay the 'requisite fees of membership' for four . . . properties." In other words, by the time the association filed its pretrial stipulation asking the district court to determine "damages," and setting out a specific amount requested, it was clear that damages were on the table.

Any lingering prejudice was cured by the forty-five-day recess after the first day of trial. The district court explicitly gave Centerline notice of the damages request and amount, then gave it time to conduct discovery and prepare a defense to the damages theory. As the district court explained, the recess permitted Centerline time "introduce evidence and argue fully its opposition to monetary damages and declaratory relief." On the second day of trial, Centerline had a full opportunity to contest the damages and declaratory relief.

Centerline raises two arguments for why it was prejudiced by the damages request—neither convincing. First, Centerline argues that the association "thwarted" and "stonewalled" its midtrial damages discovery, so it remained prejudiced by the damages

request.    But Centerline hasn't explained how the association thwarted and stonewalled Centerline's ability to defend itself.  Centerline never asked the district court for another continuance, for an extended recess, or to compel the association to provide additional discovery materials.  *Cf. United States v. Kubiak*, 704 F.2d 1545, 1552 (11th Cir. 1983) (rejecting "the prejudice now complained of by the appellant" when the appellant had "never asked for a recess, let alone a continuance . . . [but] simply acquiesced in the continuation of the trial"); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1327 n.6 (11th Cir. 2006) (holding that because the plaintiff "could have moved the court for a continuance in order to conduct additional discovery" her failure to do so "indicat[ed] her position that the record was sufficient").  Centerline's only request after the forty-five day hiatus was for the district court to reconsider its declaratory judgment order and deny monetary relief altogether.

Second, Centerline contends that *International Harvester Credit Corp. v. East Coast Truck*, 547 F.2d 888 (5th Cir. 1977), compels reversal.  There, East Coast sued Harvester for breach of contract, and Harvester counterclaimed for damages.  *Int'l Harvester*, 547 F.2d at 889.  The district court found in Harvester's favor, but it ordered the contract rescinded instead of awarding damages.  *Id.* at 889.  The district court's rescission award was vacated on appeal because East Coast's complaint hadn't asked for rescission, and East Coast had disclaimed seeking rescission in a pretrial conference.  *Id.* at 890.  On that basis, *International Harvester* found the

district court couldn't grant rescission under Rule 54(c) because "Harvester was prejudiced by East Coast's failure to seek rescission in its complaint." *Id.* at 891.

Here, unlike in *International Harvester*, the district court found that Centerline was not prejudiced by the association's damages request, and the question for us is whether that finding was clearly erroneous. It wasn't because damages were (1) implicit in the complaint's request for an injunction compelling the payment of country club fees, (2) expressly permitted under the statute, and (3) explicitly raised before trial, after which the district court provided Centerline ample time to prepare to litigate the issue. "[D]rawing all inferences in favor of the district court's decision," *Fla. Int'l*, 830 F.3d at 1253, we're not left with a "definite and firm conviction that" the district court wrongly found that Centerline wasn't prejudiced, *S. Tr. Metals*, 894 F.3d at 1322. Because Centerline wasn't prejudiced, the district court didn't abuse its discretion by allowing the association to seek damages under rule 54(c).

## B. Damages Calculation

Next, Centerline argues that even if damages were appropriate, the trial evidence didn't support the amount the district court awarded. Specifically, Centerline contends that (1) the invoices shouldn't have been admitted because of the association's discovery violations; (2) the evidence was insufficient to support the award; and (3) the district court's factual findings were deficient.

*1. The district court didn't abuse its discretion by admitting the in-
voices.*

We begin with the district court's decision to admit the in-voices showing the amounts Centerline owed the association. "A district court's evidentiary rulings," including the admission or ex-clusion of evidence under Rule 37, "are reviewed for abuse of dis-cretion." *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc.*, 595 F.3d 1203, 1210 (11th Cir. 2010). We review the district court's harmlessness finding only for clear error. *See Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019). Because the district court didn't clearly err in finding that admission of the in-voices was harmless, the district court didn't abuse its discretion in admitting them.

Rule 26 provides that, unless otherwise exempted, "[a] party must, without awaiting a discovery request, provide . . . a compu-tation of each category of damages claimed" and "must also make available . . . the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). And Rule 37 prevents a party from introducing at trial any infor-mation it failed to disclose in violation of Rule 26, "unless the fail-ure was substantially justified or is harmless." *Id.* R. 37(c)(1).

The association produced the invoices showing the amounts owed on the eve of trial—after the discovery deadline. The district court eventually admitted the invoices on the second day of trial, after it had given Centerline the opportunity to "review them and analyze them" during the forty-five day recess. The district court

found that any Rule 26 violation was "cured" because the recess mitigated any prejudice and gave Centerline the opportunity to conduct additional discovery—which it did—to prepare its defense to the damages request.

The district court didn't clearly err in determining that any Rule 26 violation was harmless. Centerline had the invoices well before the lawsuit was filed. *Cf. Taylor*, 940 F.3d at 607 (Tjoflat, J., dissenting) ("'[H]armlessness' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." (quotation omitted)). And there was no evidence suggesting the association's nondisclosure during discovery was intentional or a litigation tactic to unfairly deprive Centerline of the opportunity to prepare its defense. *See id.* at 606–07; *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985) (observing that discovery sanctions may be imposed to "punish those guilty of willful bad faith and callous disregard of court directives"). Because Centerline had a full and fair opportunity to present its defense to the association's damages claim—including the opportunity for additional discovery and to present additional defenses—it wasn't clearly erroneous for the district court to find that admitting the invoices was harmless.[4] And

---

[4] Centerline alternatively argues that the district court abused its discretion by delaying the trial so that the association could introduce the invoices because they were "irrelevant toward any injunction claim." But when the district court delayed the trial, it had already decided that the association could seek declaratory relief or any other remedy "available under [Florida Statute

16                    Opinion of the Court                    20-11800

because the late discovery was harmless, the district court did not abuse its discretion by admitting the invoices.

*2. The evidence was sufficient to support the damages award.*

Because the district court didn't abuse its discretion by admitting the invoices, Centerline's argument that there was insufficient evidence supporting the damages award also fails.

At trial, the association introduced testimony from its chief financial officer, Stefan Hagedorn. Mr. Hagedorn testified that he "supervised" the preparation of the invoices and explained the factual basis for them. Mr. Hagedorn then described each line item on the invoices. He explained that Centerline was only charged fees for a social membership in the country club—the "default" and "least expensive" membership. He testified Centerline owed $508,975.16 in unpaid fees, consisting of "the membership initiation fee," "prorated dues," and "prorated assessments." The invoices themselves also provided substantial evidence supporting the district court's damages award. Each invoice explained, line-by-line, the dues and assessments that Centerline owed.

When the district court calculated the association's damages, it expressly considered the invoices, the declaration, and Mr. Hagedorn's testimony. And it didn't just accept the invoices at face

---

section] 720.305(1)." The invoices were relevant because section 720.305 allowed the association to enforce the "governing documents of the community"—i.e., the declaration and bylaws—including any fees those documents imposed.

value; rather, the district court considered each fee and charge assessed and determined whether the association was entitled to them. The district court explained that, consistent with the bylaws, Centerline had to pay only one initiation fee and was "entitled to a credit" for a portion of the membership fee assessed on a unit that Centerline sold while this case was pending. The district court also declined to award damages for the fees and assessments not tied to country club membership because the "entire case" was about "whether Centerline [was] . . . a member of the country club and (if so) what it must pay as a consequence of that status." Together, the declaration, Mr. Hagedorn's testimony, and the invoices provided sufficient evidence for the district court's damages award.

### 3. The district court's factual findings support its damages award.

Centerline alternatively argues that, even if the evidence were sufficient to properly calculate damages, the district court still needed to (but didn't) determine what type of "member" Centerline was because the country club offered various memberships at different prices.

After a bench trial, a district court is required to "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). To meet this requirement, a district court must "find the facts with enough specificity for a reviewing court to identify the factual findings upon which the court's legal conclusions are based." *Stock Equip. Co., a Unit of Gen. Signal Corp. v. Tenn. Valley Auth.*, 906 F.2d 583, 592 (11th Cir. 1990). But "the judge need only make brief, definite, pertinent findings and conclusions

upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." *Id.* That's because "[w]e presume that the judge considers all of the evidence, and relies on so much of it as supports the finding and rejects what does not support the finding, unless the judge states otherwise." *Id.* (quotation omitted).

Here, the district court's factual findings give us "a clear understanding of the analytical process by which [its] ultimate findings were reached and . . . assure us that the trial court took care in ascertaining the facts." *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1549 (11th Cir. 1987) (quotation omitted), *abrogated on other grounds by Dutra Grp. v. Batterton*, 139 S. Ct. 2275 (2019). The district court found that: (1) Centerline had "not paid any dues, assessments, or fees," and (2) the amounts invoiced reflected how much Centerline owed the association. The damages the district court awarded were directly drawn from those invoices. Moreover, Mr. Hagedorn testified (and the invoices support) that Centerline was only charged for a social membership—the least expensive membership. Centerline never argued that it was entitled to a rate below the social membership rate, so the district court's failure to make a finding on the issue was harmless.

Because the record shows the district court "consider[ed] all of the evidence" and "ma[d]e . . . definite, pertinent findings" addressing the matters contested at trial—whether and how much Centerline owed the association for unpaid dues and fees—we conclude that the district court's factual findings sufficiently supported

its damages award.  *See Stock Equip.*, 906 F.2d at 592 (quotations omitted).

### C.  *Personal Liability under the Declaration*

Finally, Centerline argues that the declaration didn't allow the association to hold property owners personally liable for unpaid dues and fees.

"The interpretation of a contract is a question of law that we review *de novo*."  *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1293 (11th Cir. 2019).  Under *Erie*, we "apply Florida contract-interpretation principles," which require that we interpret the declaration "in accordance with its plain meaning" and construe it "as a whole."  *Id.* (quotation omitted); *see also U.S. Rubber Prods. v. Clark*, 200 So. 385, 388 (Fla. 1941).

Centerline focuses on article VII, section 2 of the declaration, which says that no property owner "shall have any personal liability under or in connection with [the] [d]eclaration." But the association points to article VI, section 6, which states that

> [i]f any Annual or Additional Assessment or any installment of either is not paid on the date when due, then such assessment shall become delinquent and shall . . . become a continuing lien . . . .
>
> If the delinquent assessment is not paid within thirty (30) days after delinquency date, . . . the Property Owners Association may bring an action at law

against the Owner *personally obligated* to pay same . . . .

These two provisions conflict. Article VII, section 2 says that owners are not personally liable under the declaration, while Article VI, section 6 says that owners *are* personally liable to the association for certain delinquent assessments. So, we look to Florida law to resolve the apparent conflict.

Under Florida law, when "provisions of a contract conflict, it is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." *Idearc Media Corp. v. M.R. Friedman & G.A. Friedman, P.A.*, 985 So. 2d 1159, 1161 (Fla. Dist. Ct. App. 2008) (quotation omitted); *see also* Restatement (Second) of Contracts § 203 (Am. L. Inst. 1981) ("[S]pecific terms and exact terms are given greater weight than general language."). Article VII, section 2 of the declaration *generally* restricts an owner's personal liability by providing that "no [o]wner . . . shall have any personal liability" under the declaration. Article VI, section 6 is a *specific* exception to that general rule. It allows the association to hold a delinquent property owner personally liable for unpaid dues and assessments. Because these provisions conflict, article VI, section 6's specific rule that owners are liable for certain assessments controls over Article VII, section 2's more general no-owner-liability rule. *See Idearc*, 985 So. 2d at 1161.

As a fallback, Centerline argues that, even if it could be held personally liable, Article VI, section 6 allows the association to collect only certain defined assessments and the district court never found the country club fees fell within that definition.

We're unconvinced. The declaration lets the association sue a delinquent club member for "any Annual or Additional Assessment," including what it terms "Class E Assessments." The declaration defines Class E Assessments broadly:

> Pursuant to the Bylaws, the Directors of the Property Owners Association shall separately estimate the costs and expenses, including a reasonable provision for contingencies and for a reserve for capital replacements, to be incurred by the Property Owners Association in the performance of the duties of and exercise of the powers of ownership and operation of Country Club assets, and shall determine the dues, assessments, charges thereunder . . . (in the aggregate, defined as the "Class E Assessments").

The damage award consisted of Class E Assessments because it included only dues, assessments, and charges "specific to country club membership" that were authorized by the association's directors. Therefore, article VI, section 6 allowed the association to personally sue Centerline to collect these assessments.

## IV. CONCLUSION

Because the district court didn't abuse its discretion by awarding damages, sufficient evidence supported the award, and

the declaration allowed for Centerline's personal liability, we affirm the judgment for the association.

**AFFIRMED.**